**SO ORDERED**

**SIGNED this 13 day of February, 2026.**

_____
**Pamela W. McAfee**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

**LUCAS DANIEL RIEDER ALBRECHT,**

     **DEBTOR**

**CASE NO.
25-01097-5-PWM
CHAPTER 7**

---

**KEVIN L. SINK, TRUSTEE,**

     **PLAINTIFF,**

    v.

**LUCAS DANIEL RIEDER ALBRECHT and
KIRSTEN PIPER MOORE,**

     **DEFENDANTS.**

**ADV. PRO. NO.
25-00135-5-PWM**

### MEMORANDUM OPINION ALLOWING SUMMARY JUDGMENT
### IN FAVOR OF THE PLAINTIFF AND DENYING
### DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

The issue before the court is whether the deeding of real property held as joint tenants to tenancy by the entirety on the eve of bankruptcy, rendering the equity in the property unavailable to individual creditors, is a voidable transfer. The parties stipulated to the facts, and the matter is before the court on cross-motions for summary judgment filed by the plaintiff, Kevin L. Sink as chapter 7 trustee for Lucas Daniel Rieder Albrecht (the Trustee), on December 10, 2025, D.E. 14,

and by the defendants, Lucas Daniel Rieder Albrecht and Kirsten Piper Moore, on December 31, 2025, D.E. 17. A hearing took place on February 3, 2026, in Raleigh, North Carolina, at the conclusion of which the court took the matter under advisement. For the reasons that follow, summary judgment will be entered in favor of the Trustee, and the defendants' cross-motion for summary judgment is denied.

## PROCEDURAL BACKGROUND

Lucas Daniel Rieder Albrecht filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 26, 2025, and Kevin L. Sink was appointed Trustee. On July 2, 2025, the Trustee filed the complaint in this adversary proceeding, asserting claims against the defendants, Mr. Albrecht and his spouse Kirsten Piper Moore, to avoid a transfer of an interest in real property pursuant to 11 U.S.C. §§ 548(a)(1)(A)-(B) and North Carolina General Statutes §§ 39-23.4(a)(1)-(2). D.E. 1.

On December 10, 2025, the Trustee filed a stipulation of facts, D.E. 14. On the same day, the Trustee filed a motion for summary judgment and accompanying memorandum pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. D.E. 15, 16. The Trustee contends that Mr. Albrecht and Ms. Moore's retitling of property owned by them as joint tenants to a tenancy by the entirety is an actually and constructively fraudulent transfer avoidable under both federal and state law. The Trustee also contends that the stipulated facts demonstrate that the transfer is avoidable as a matter of law.

On December 31, 2025, Mr. Albrecht and Ms. Moore filed a response in opposition to the Trustee's motion and a cross-motion for summary judgment and accompanying memorandum. D.E. 17, 18.  Mr. Albrecht and Ms. Moore agree that there is no genuine issue of material fact, but

they contend that they are entitled to judgment as a matter of law because (1) there was no transfer, and (2) if there was a transfer, there is no actual or constructive fraud because Mr. Albrecht received reasonably equivalent value from Ms. Moore, a fact that (in their view) would negate actual intent and would defeat the claim for constructive fraud.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## UNDISPUTED FACTS[1]

On or around May 13, 2020, Mr. Albrecht and Ms. Moore, who at that time were unmarried, purchased real property at 4704 Arbor Chase Drive, Raleigh, North Carolina 27616 (the Property) as "Joint Tenants w/Rights of Survivorship." D.E. 14, ¶ 2. For nearly five years, from May 13, 2020 to February 26, 2025, Mr. Albrecht and Ms. Moore resided in the Property as unmarried domestic partners. *Id*., ¶ 4.

On the advice of counsel and in preparation for filing the petition, Mr. Albrecht and Ms. Moore married on February 26, 2025, and, on February 27, 2025, "each separately and independently executed a North Carolina Non-Warranty Deed as grantors in favor of themselves as spouses" (the February Deed). *Id*., ¶ 3. The February Deed conveyed Mr. Albrecht's one-half

---

[1] The recited facts are contained in the Stipulation of Facts, D.E. 14.

interest in the Property to himself and his new spouse, Ms. Moore, as tenants by the entirety. *Id.*, ¶ 5. Before the transfer, Mr. Albrecht's one-half interest was valued at $210,000[2] (one-half of the Property's total value of $420,000) and was subject to execution by his individual creditors, but after the transfer, his interest became exempt from the claims of his individual creditors. *Id.*, ¶¶ 6-7. Mr. Albrecht received no consideration for the transfer beyond the February Deed itself. *Id.*, ¶ 8. Mr. Albrecht's voluntary petition for relief under the Bankruptcy Code was filed 27 days after execution of the February Deed. *Id.*, ¶ 9. Mr. Albrecht was insolvent on the date of the transfer, February 27, 2025, or became insolvent because of that transfer. *Id.*, ¶ 10.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate the existence of

---

[2] The Schedules filed in the bankruptcy case indicate that the Property is encumbered by a mortgage in the amount of $247,811.56, Case No. 25-01097-5-PWM, D.E. 1 at 21, resulting in a one-half equity interest value of $86,094.22. Mr. Albrecht has an available homestead exemption in the amount of $30,000, which would make available $56,094.22 in value to the estate should the transfer at issue be avoided. Timely claims filed in the case total $61,463.74.

4

specific, material facts that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. Here, the parties agree that there are no disputed facts and that the court may determine the outcome of the proceeding solely as a matter of law.

## DISCUSSION

The Bankruptcy Code empowers a chapter 7 trustee to avoid a transfer as constructively or actually fraudulent as defined by the Bankruptcy Code, and further empowers a trustee to avoid transfers using substantive North Carolina law under certain circumstances. Although the language of the Bankruptcy Code and state statutes differs, at their core the elements of the claims are the same.

A transfer may be avoided as constructively fraudulent under § 548(a)(1)(B) where the following five elements are established: (1) the debtor had an interest in property; (2) the debtor transferred that interest; (3) the transfer occurred on or within two years before the debtor filed for bankruptcy relief; (4) the debtor received less than reasonably equivalent value for the transfer; and (5) the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. A transfer may be avoided as actually fraudulent under § 548(a)(1)(A) of the Bankruptcy Code upon a showing of the following four elements: (1) the debtor had an interest in property; (2) the debtor transferred that interest; (3) the transfer occurred on or within two years before the debtor filed for bankruptcy relief; and (4) the debtor made the transfer with intent to hinder, delay, or defraud any creditor. The elements of constructive and actual fraud for purposes of a voidable transfer under North Carolina law, North Carolina General Statutes §§ 39-23.4(a)(2) and (1),

respectively, are the same, but North Carolina provides for the avoidance of transfers made within four years as opposed to two.

As detailed more fully below, Mr. Albrecht and Ms. Moore contend that the transaction was not a "transfer" at all, which, if proven, would necessarily defeat the Trustee's claims under any of the applicable statutes. They further contend that even if it was a transfer, Mr. Albrecht received reasonably equivalent value in exchange for the transaction, which would defeat the federal and state claims for avoidance under a constructive fraud theory and, as argued at the hearing, would negate any "badges of fraud" otherwise present to defeat the claims for actual fraud.

## I.       Whether the Transaction Constitutes a Transfer of an Interest

The transaction in question is the execution of a deed by Mr. Albrecht and Ms. Moore, who held the Property as joint tenants, to themselves as tenants by the entirety. In other words, the grantors and grantees in name are the same, and the Property is the same, but the ownership interests changed from joint tenants to tenants by the entirety – an interest that under state law transforms an undivided and alienable one-half interest into an undivided and *in*alienable *100%* interest.

Mr. Albrecht and Ms. Moore contend that a transfer did not occur under the Bankruptcy Code or North Carolina law, maintaining that the Trustee "must prove that the retitling of joint tenancy property as tenancy by entirety property is an instance of either (a) disposing of property or (b) a valuable legal right appurtenant to that property." D.E. 18 at 2. They assert that the focus should be solely on the transferor's rights, not the rights of a creditor or the bankruptcy estate, and they contend that the change in Mr. Albrecht's interest from "alienable" to "inalienable" is not a meaningful change to Mr. Albrecht's rights. Mr. Albrecht and Ms. Moore also contest the Trustee's argument that, under North Carolina law, a tenancy by the entirety is by definition

6

created by transfer; instead, they maintain that a transfer is not the "exclusive" way to create a tenancy by the entirety.

The Trustee contends that the broad definition of transfer under 11 U.S.C. § 101(54) establishes that the transaction was a transfer of Mr. Albrecht's interest in the Property. Specifically, he argues that the conversion from joint tenancy to tenancy by the entirety placed Mr. Albrecht's interest in the Property beyond the reach of his individual creditors, representing a transfer that changed not only Mr. Albrecht's rights and interest in the Property, but also those of the bankruptcy estate. The Trustee also contends that the governing North Carolina statutes provide that a tenancy by the entirety is effectuated by transfer.

The court begins its analysis with North Carolina state law and with the Bankruptcy Code itself. Under North Carolina law, spouses receive a vested interest in real property as tenants by the entirety via "[a] conveyance by a grantor of real property, or any interest in real property, to the grantor and his or her spouse." *See* N.C. Gen. Stat. § 41-56(b). The statute defines conveyance as "[a] *transfer* of title to real property by deed or devise or other instrument transferring title to real property." N.C. Gen. Stat. § 41-55(1) (emphasis added). The Bankruptcy Code defines a transfer as

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary,
>     of disposing of or parting with—
>     (i) property; or
>     (ii) an interest in property.

11 U.S.C. § 101(54).

With respect to the Bankruptcy Code, Congress intended to make this definition "'as broad as possible.'" *Ivey v. First Citizens Bank & Trust Co. (In re Whitley)*, 848 F.3d 205, 208 (4th Cir.

2017) (quoting S. Rep. No. 95–989, at 27 (1978)). Courts disfavor narrowing the scope of this expansively defined term. *See, e.g.*, *Smiley v First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 565 (7th Cir. 1989) (rejecting party's proffered definition of transfer narrowing the term to require assets to become "beyond the reach of the creditors or outside the jurisdiction of the bankruptcy court."). A transfer "encompasses every means and manner by which property can pass from ownership and possession of another, and any transaction that reduces or extinguishes valuable legal rights is subject to avoidance." *Terry v. Paschall (In re Paschall)*, 403 B.R. 366, 374 (Bankr. E.D. Va. 2009) (citations omitted); *see also Pirie v. Chicago Title & Tr. Co.,* 182 U.S. 438, 444 (1901) (examining a section of the Bankruptcy Act of 1898 from which the current Bankruptcy Code definition was derived). In short, a transfer may occur when there is a reduction or extinguishment of valuable legal rights.

Mr. Albrecht maintains that his rights were not meaningfully changed. Whether Mr. Albrecht's property interests were altered by the transformation from joint tenancy to tenancy by the entirety must be determined under applicable state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979). North Carolina law differentiates these types of property ownership: while a joint tenancy allows a tenant to freely alienate his or her property interest, a tenancy by the entirety reduces a tenant's right to alienate by conditioning alienation upon the consent of his or her spouse. *Contrast*, N.C. Gen. Stat. §§ 41-73(b)(1)-(4) (joint tenancy allows unilateral alienation of a single tenant's property interest), *with Moore v. Greenville Banking & Tr. Co.,* 178 N.C. 118, 100 S.E. 269, 272 (1919) (tenancy by the entirety requires the assent of both spouses to alienate). In sum, the inherently restrictive nature of tenancy by the entirety under North Carolina law demonstrates that Mr. Albrecht's legal rights were reduced.

8

Cases from bankruptcy courts outside of this jurisdiction support the conclusion that Mr. Albrecht's rights have been materially changed by the interspousal transfer of property interests. For example, in *In re Oliver*, 44 B.R. 989 (D. Mass. 1984), a Massachusetts bankruptcy court held that the conversion or re-titling by a chapter 7 debtor of exempt real property held in a common law tenancy by the entirety to exempt real property held in an updated statutory version of tenancy by the entirety was a transfer under the Bankruptcy Code because the debtor's rights in the real property were significantly reduced by the transfer. That court concluded that the transaction was a transfer because the debtor "gave up his exclusive rights to possession and profits, and created a tenancy in which he would share them equally with his wife." *Id.* at 991. More recently, a bankruptcy court in the Northern District of Illinois held that a chapter 7 debtor's conveyance or re-titling of non-exempt real property held in a joint tenancy to exempt real property held as a tenancy by the entirety was a transfer under the Bankruptcy Code, considering both that the rights of the debtor's individual creditors were extinguished by the transfer and that the debtor's rights were reduced by the inability to alienate his property interest without the consent of his spouse. *See Olsen v. Paulsen (In re Paulsen)*, 623 B.R. 747, 754 (Bankr. N.D. Ill. 2020); *see also In re Mickens*, 575 B.R. 797, 801-02 (Bankr. W.D. Mich. 2017), *aff'd, Hagan v. Mickens*, 589 B.R. 594 (W.D. Mich. 2018) ("[T]here is no question that the prepetition transfer changed the Debtors' respective rights and interests in the Property. That is, to the extent property can be described as a 'bundle of sticks' comprised of various individual rights, the joint tenancy bundle held by each Debtor prior to the transfer was different than the tenancy by the entirety bundle that existed after the transfer.") (citations omitted).

The Fourth Circuit has implicitly determined that a transaction similar to the one now before this court was a "transfer" by upholding a denial of the debtor's discharge under § 727(a)(2),

which applies to a "transfer" with the intent to hinder, delay or defraud a creditor or the estate, in a case in which a chapter 7 debtor re-titled non-exempt real property held in fee simple to exempt real property held as a tenancy by the entirety. *See Ford v. Poston (In re Ford)*, 773 F.2d 52, 54-55 (4th Cir. 1985). More specifically, the argument that re-deeding from joint tenancy to tenancy by the entirety is not a "transfer" was rejected in *Fink v. Arregui (In re Arregui)*, No. 22-04027-btf, 2023 WL 6205616, at *3, *8-11 (Bankr. W.D. Mo. Sept. 22, 2023) ("'A party . . . need not surrender ownership in an asset in order to effectuate a transfer.' . . . The effect of the transaction determines its characterization as a transfer, 'not the circuity of the arrangement.'") (quoting *Kaler v. Craig (In re Craig)*, 144 F.3d 587, 591 (8th Cir. 1998)).

In addition, the court has no basis on which to accept the narrow view urged by Mr. Albrecht and Ms. Moore in which their singular focus is on a change to the transferor's rights. A reduction of the legal rights of the transferor's individual creditors is also relevant. The court agrees with the *Paulsen* court, which considered *both* the change in the debtor's rights and the extinguishment of the rights of the debtor's individual creditors when their claims could no longer be satisfied from re-titled real property. *See Paulsen*, 623 B.R. at 754. As that court explained, a transfer "may include the reconveyance by spouses of property held in joint tenancy to tenancy by the entirety . . . 'because prior to the conveyance by the Debtor, his fractional interests could have been subjected to satisfy the claims of the [creditors], and they could not reach [those] interests after the conveyance because they had no enforceable claim against . . . the Debtor's wife.'" *Id.* (quoting *In re Miller*, 188 B.R. 302, 305 (Bankr. M.D. Fla. 1995)). Considering the impact on creditors and the estate is, as the Trustee noted, consistent with the overall purpose of the avoidance powers contained in chapter 5 of the Bankruptcy Code, which is to augment the estate through asset recovery for distribution to creditors according to the priorities of the Bankruptcy Code.

This survey of authority demonstrates that, contrary to the contentions of Mr. Albrecht and Ms. Moore, none of the interspousal transfer cases limit a court's inquiry to whether the rights of the transferor are reduced (as opposed to the rights of creditors). Nor do these cases support the contention that Mr. Albrecht's interests were not reduced by the change in tenancy. Valuable legal rights of the transferor, Mr. Albrecht, were reduced due to the restrictive nature of entirety ownership. Further, Mr. Albrecht and Ms. Moore acknowledge that when the Property was re-titled to tenancy by the entirety, it became exempt from the claims of Mr. Albrecht's individual creditors. Valuable legal rights of those creditors were drastically reduced, if not completely extinguished, by the execution of the February Deed. Both of these changes in legal rights support the conclusion that the transaction was a "transfer."

Mr. Albrecht and Ms. Moore concede that they presented no authority that supports their argument in the context of a transaction re-deeding property from joint tenants to tenants by the entirety. They do, however, rely on the Fourth Circuit's opinion in *Whitley*, in which a chapter 7 trustee sought to recover, *from the depository bank as transferee*, proceeds deposited by the chapter 7 debtor into his personal checking account. 848 F.3d at 206-07. The *Whitley* court held that a deposit into a personal checking account did not constitute a transfer under the Bankruptcy Code because "the debtor is still free to access those funds at will," and "the requisite disposing of or parting with property has not occurred." *Id.* at 210 (cleaned up). Mr. Albrecht and Ms. Moore contend that *Whitley* is analogous because Mr. Albrecht's bankruptcy estate was not diminished by the execution of the February Deed, and Mr. Albrecht could still freely access the Property before and after the conveyance. Therefore, they maintain, a re-titling from joint tenancy to tenancy by the entirety between the same parties does not constitute a transfer under the Bankruptcy Code.

The court finds Mr. Albrecht's and Ms. Moore's reliance on *Whitley* inapposite and unpersuasive, particularly in light of more directly applicable law. The *Whitley* court itself provided that the "*holding is limited to the narrow circumstances presented here*: when a debtor deposits or receives a wire transfer of funds into his own unrestricted checking account in the regular course of business, he has not transferred those funds *to the bank* that operates the account." *Id.* (emphasis added). Further, *Whitley* is inapplicable on its facts. Although Mr. Albrecht could still freely access the Property after the transfer, the bankruptcy estate was diminished. In contrast, the deposited funds in *Whitley* remained property of the bankruptcy estate and were never placed outside creditors' reach. *See id.* In other words, the funds were not transferred from nonexempt status to an exempt bank account, but simply deposited place into an unrestricted account.

The interests of both Mr. Albrecht and his creditors were changed through the execution of the February Deed. Based on the weight of authority, the applicable statutes, and the stipulated facts, the court concludes as a matter of law that the February Deed was a transfer under § 101(54) of the Bankruptcy Code and as contemplated by § 548 of the Bankruptcy Code and North Carolina General Statutes § 39-23.4(a).

## II.    Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) and North Carolina General Statutes § 39-23.4(a)(2)

As set forth above, a transfer may be avoided as constructively fraudulent under § 548(a)(1)(B) when the following five elements are established: (1) the debtor had an interest in property; (2) the debtor transferred that interest; (3) the transfer occurred on or within two years before the debtor filed for bankruptcy relief; (4) the debtor received less than reasonably equivalent value for the transfer; and (5) the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. The North Carolina voidable transfer statute is substantively identical but extends the look-back period to four years. *See* N.C. Gen. Stat. § 39-23.4(a)(2).

12

Because the court has concluded that the transaction in question constituted a "transfer," the only element in dispute is whether Mr. Albrecht received reasonably equivalent value for the transfer. Reasonably equivalent value is "a question of fact as to which the court is to be given considerable latitude to make a determination by considering all the facts and circumstances surrounding the transaction in question." *Whitaker v. Mortgage Miracles, Inc. (In re Summit Place, LLC)*, 298 B.R. 62, 73 (Bankr. W.D.N.C. 2002) (citing *Breeden v. Bennett (In re Bennett Funding Group, Inc.)*, 220 B.R. 743, 769 (Bankr. N.D.N.Y. 1997)). According to the Trustee, reasonably equivalent value must be analyzed with a focus on the net effect of the transfer on Mr. Albrecht's bankruptcy estate, rather than a focus on what assets Mr. Albrecht retained and could enjoy. The Trustee contends that the transfer depleted the bankruptcy estate of $210,000 in value (excluding encumbrances and allowable exemptions) that was, prior to the transfer, available for distribution to Mr. Albrecht's individual creditors, with no value received in its place.

Mr. Albrecht and Ms. Moore contend that Mr. Albrecht received reasonably equivalent value for the transfer because "whatever was transferred or forfeited by the Debtor to his wife was also transferred or forfeited by his wife to the Debtor. What was given was also received. There is no more equivalent value than that." D.E. 18 at 5. Mr. Albrecht and Ms. Moore cited no authority for this proposition, but this court, in its own research, did find one court that adopted their argument, albeit applying Eighth Circuit law. In *Arregui,* discussed earlier, the bankruptcy court for the Western District of Missouri concluded that "viewing reasonably equivalent value from the creditors' perspectives under these circumstances would severely limit a debtor's right to engage in good faith exemption planning—a right the Eighth Circuit has repeatedly upheld." 2023 WL 6205616, at *12  (citation omitted); *but see  Hagan v. Mickens (In re Mickens)*, 589 B.R. 594, 600

(W.D. Mich. 2018) (rejecting the argument that reasonably equivalent value was received because Michigan law applied the "perspective of creditors" test in constructive fraud cases).

     *Arregui* and *Mickens* addressed this argument in the identical context of a transfer from joint tenancy to tenancy by the entirety. *Arregui* involved two long-married debtors who, acting upon advice of counsel, re-deeded their property three days before filing for bankruptcy. 2023 WL 6205616, at *1. The court held that the debtors "transferred title to their $230,700 residence as joint tenants and received title to their $230,700 residence as tenants by the entirety," and that "[b]ecause these values are substantially comparable in worth, the fair market value of the property the [debtors] received was reasonably equivalent to the fair market value of the property the [debtors] transferred." *Id.* at *13. The court applied a debtor-focused approach to the federal and state voidable transfer statutes based on its interpretation of the language of the statutes, noting that "[b]ecause both statutes focus on the value the debtor received rather than the value that became available to unsecured creditors as a result of the transfer, the relevant language does not contemplate analysis from creditors' perspectives. The court must follow the clear statutory language and analyze whether the value the debtor received was at least reasonably equivalent to the value transferred." *See id.* at *12.

     While the court can understand the *Arregui* court's perspective, an alternative view of the language "if the debtor . . . received a less than reasonably equivalent value" focuses not on what value the debtor, as opposed to his creditors or the estate, received, but rather on whether it was the debtor, as opposed to a third party, who received the value given by the transferee. For example, a debtor might pay professional fees to an attorney for services provided to a third party. There, the attorney-transferee gave value for those fees, but that value was not received *by the debtor*. This is also the distinction relied upon by trustees seeking to recover tuition payments made by

14

parents to a private school for their children – the school gave value, but not *to the debtors*. Further, the *Arregui* court purposely applied a debtor-focused approach over a creditor-focused approach because its binding appellate court, the Eighth Circuit, has repeatedly upheld a debtor's right to broadly engage in good faith exemption planning.[3] *See id*. Even so, and despite finding reasonably equivalent value – which defeated a claim for constructive fraud – the *Arregui* court still avoided the transfer on the basis of actual fraud under both federal and state law. *See id*. at *5-9 (finding fraudulent intent based on several badges of fraud).

Similarly, *Mickens* involved two long-married debtors who, acting upon advice of counsel, transferred real property from joint tenancy to tenants by the entirety three days before filing a petition for bankruptcy relief. 575 B.R. at 799. The bankruptcy court, applying Michigan law, applied the creditor-focused approach and held that "insolvent debtors may not create an entireties estate at the expense of their creditors." *See id*. at 810. The *Mickens* court concluded that "'Michigan fraudulent conveyance law is clear that the reasonable equivalen[ce] of value received in exchange for a transfer is to be viewed from the standpoint of creditors.'" *Id*. at 805. Affirming, the district court reasoned that "'[v]alue' is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." *Hagan v. Mickens*, 589 B.R. at 600 (citing Uniform Fraudulent Transfer Act § 3, cmt. 2.).

---

[3] Even the Eighth Circuit, however, has recognized that prebankruptcy planning is not unlimited. In *Norwest Bank Neb., N.A. v. Tveten*, the court upheld the denial of the debtor's discharge for transferring non-exempt assets to an exempt trust, distinguishing between the conversion of non-exempt assets into dollar-limited exempt assets (such as a statutory homestead) and the transference of non-exempt assets into unlimited exempt assets (such as the trust in question). 848 F.2d 871, 876-77 (8th Cir. 1988). Here, Mr. Albrecht remains entitled to claim the dollar-limited statutory homestead exemption even if the transfer is avoided.

15

This court is bound by precedent from the Fourth Circuit. And while the Fourth Circuit has, like the Eighth Circuit, held that transforming nonexempt to exempt property on its own is not fraudulent, *see Ford*, 773 F.2d at 54, this circuit, unlike the Eighth Circuit,[4] expressly measures value received from the perspective of creditors, not the transferor. In the Fourth Circuit,

> [t]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

*In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992); *see also In re N. Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004) (agreeing with the Fourth Circuit regarding the proper focus of fraudulent transfer claims). This instruction distinguishes the *Arregui* court's basis for applying the debtor-focused approach. Both *Arregui* and *Mickens* are appropriately predicated upon the controlling analysis in their jurisdictions. And, while the Eighth Circuit's expressed policy may favor the debtor-focused approach, the Fourth Circuit, like the *Mickens* court, has expressly applied the creditor-focused approach.

In this case, applying the creditor-focused approach of *Jeffrey Bigelow*, the undisputed facts indicate that Mr. Albrecht's unsecured creditors, and consequently his bankruptcy estate, were in a worse position after the Property was transferred to tenancy by the entirety. Prior to the transfer, Mr. Albrecht's unsecured creditors could have executed on equity in the Property; in contrast, after the transfer, they could not touch this valuable real property interest due to its newfound status as a tenancy by the entirety. Because Mr. Albrecht's unsecured creditors and estate are negatively impacted by the transfer, he did not receive reasonably equivalent value for executing the February Deed.

---

[4] According to *Arregui*, "the Eighth Circuit does not appear to have considered whether pre-bankruptcy exemption planning transfers might qualify as constructively fraudulent transfers." 2023 WL 6205616, *12.

Because the court concludes that Mr. Albrecht did not receive reasonably equivalent value for the transfer, and the other elements of a constructively fraudulent transfer are not disputed, the court concludes as a matter of law that the Trustee has established that the transfer is avoidable as constructively fraudulent pursuant to § 548(a)(1)(B) and N.C. Gen. Stat. § 39-23.4(a)(2), and summary judgment will be entered in favor of the Trustee.

**III.    Actual Fraud under 11 U.S.C. § 548(a)(1)(A) and North Carolina General Statutes § 39-23.4(a)(1).**

A transfer may be avoided as actually fraudulent under § 548(a)(1)(A) where the following four elements are established: (1) the debtor had an interest in property; (2) the debtor transferred that interest; (3) the transfer occurred on or within two years before the debtor filed for bankruptcy relief; and (4) the debtor made the transfer with intent to hinder, delay, or defraud any creditor. The North Carolina voidable transfer statute for actual fraud is practically identical, except, as with constructive fraud, the look-back period is four years instead of two. *See* N.C. Gen. Stat. § 39-23.4(a)(1). Based on the stipulated facts, the only element in dispute is the debtor's intent behind the transfer.

Determining the actual intent of a debtor may be difficult "[b]ecause a debtor is not likely to testify that he had the requisite intent to defraud creditors;" thus, intent may be inferred from extrinsic evidence by evaluating whether several badges of fraud are present. *Bakst v. Clarkston (In re Clarkston)*, 387 B.R. 882, 887 (Bankr. S.D. Fla. 2008) (citations omitted). The North Carolina statute provides a non-exhaustive list of badges of fraud to be considered in determining intent, N.C. Gen. Stat. § 39-23.4(b), which is equally applied in the bankruptcy context under § 548(a)(1)(A). "[A] court should evaluate the entirety of the circumstances surrounding the transaction at issue and 'may appropriately take into account all indicia [negating] as well as those suggesting fraud.'" *Schofield-Johnson, LLC v. United States (In re Schofield-Johnson, LLC)*, 462

17

B.R. 539, 543 (Bankr. M.D.N.C. 2011) (quoting N.C. Gen. Stat. § 39-23.4(b) cmt. 6). And while "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor," *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 353 (4th Cir. 2007) (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987)), the parties here submitted stipulated facts and did not contend that intent could and should only be determined at trial.

The North Carolina statute lists thirteen[5] of the "most common factors used in determining whether a transfer was made with the actual intent." *Sparkman v. Coley (In re Coley)*, 608 B.R. 625, 635 (Bankr. E.D.N.C. 2019). The presence of a single badge of fraud will not establish fraudulent intent. *Id.*; *see also Paulsen*, 623 B.R. at 758 (noting no particular badge is necessary, nor is any combination of badges necessarily sufficient). However, "the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose." *Summit Place,* 298 B.R. at 70 (citing *In re McLaren*, 236 B.R. 882, 899 (Bankr. D.N.D. 1999)). The presence of several badges of fraud establishes a presumption of fraudulent intent. *Coley*, 608 B.R. at 636. The burden then shifts to the defendant to rebut the presumption by showing a legitimate intervening purpose for the transfer. *Id*. The same is true

---

[5] The thirteen badges of fraud enumerated in the statute are: "(1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; (11) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor; (12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and (13) The debtor transferred the assets in the course of legitimate estate or tax planning." N.C. Gen. Stat. §§ 39-23.4(b)(1)-(13).

under North Carolina law: once the plaintiff establishes that several badges of fraud exist, a presumption of fraudulent intent arises, and it is then "incumbent on the party benefited by the alleged fraud to show the bona fides of the transaction." *Anhui Omi Vinyl Co. v. USA Opel Flooring, Inc.*, 295 N.C. App. 1, 10, 905 S.E.2d 339, 345 (2024), *rev. denied,* 912 S.E.2d 827 (N.C. 2025) (citing *Brown v. Mitchell*, 102 N.C. 347, 370, 9 S.E. 702, 703-04 (1889)).

The Trustee contends the transfer effectuated by the February Deed was made with actual intent to hinder, delay, or defraud Mr. Albrecht's individual creditors. He maintains that this intent is demonstrated by the timing of both the decision to marry and the transfer itself, on the eve of bankruptcy, while they lived as unmarried domestic partners for five years. Other badges of fraud include that the transfer was to an insider, the debtor retained possession and control of the Property, the transfer was of substantially all of the debtor's assets (as evident from the filed Schedules in the case), the debtor was insolvent, and the debtor did not receive reasonably equivalent value for the transfer.

Mr. Albrecht and Ms. Moore contend that an actual fraud analysis depends "on the subjective mental state" of the defendants as well as "findings on matters of disclosure, honesty, and basic morality." D.E. 18 at 4. However, notwithstanding their opposition to the Trustee's motion for summary judgment, they did not submit any stipulated facts that would reflect their mental state other than that they relied on the advice of counsel; nor did they submit an affidavit or otherwise provide the court with any explanation beyond that the transfer was made on advice of counsel in the course of bankruptcy planning. They also note that the transfer was not concealed, and, as detailed above, they maintain that Mr. Albrecht received equivalent value for the transfer. Mr. Albrecht and Ms. Moore also contend that the receipt of reasonably equivalent value outweighs the presence of any other badge of fraud.

The conversion of non-exempt property to exempt property on the eve of bankruptcy on its own does not necessarily demonstrate fraudulent intent, even if the conversion was performed to move assets beyond the reach of creditors. *See Ford*, 773 F.2d at 54; *see also First Texas Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983); *Crampton v. Koehler (In re Koehler)*, No. 11-00999-8-JRL, 2012 WL 719744, at *3 (Bankr. E.D.N.C. Mar. 5, 2012) ("As to the timing of the conversion, *Ford* makes clear that the fact that the conversion took place on the eve of the bankruptcy filing does not necessarily raise this transaction to fraudulent per se."). Mr. Albrecht and Ms. Moore maintain that *Ford* supports robust exemption planning, including the type of transfer made here, and further that this proposition aligns with Congressional intent that a debtor should be allowed to fully use applicable exemptions. *Ford*, 773 F.2d at 54; *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6317; S. Rep. No. 989, 95th Cong., 2d Session 76, reprinted in *55 1978 U.S. Code Cong. & Ad. News 5787, 5862 ("As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.").

However, permissible exemption planning is not without its limits. For example, the North Carolina legislature prohibits the conversion of nonexempt assets into certain exempt assets within 90 days of filing bankruptcy through its "recent purchases" exception to certain personal property exemptions. *See* N.C. Gen. Stat. § 1C-1601(d).[6] In addition, and as noted above, courts have also

---

[6] That section provides: "Recent purchases. - The exemptions provided in subdivisions (2), (3), (4), and (5) of subsection (a) of this section are inapplicable with respect to tangible personal property purchased by the debtor less than 90 days preceding the initiation of judgment collection proceedings or the filing of a petition for bankruptcy, unless the purchase of the property is directly traceable to the liquidation or conversion of property that may be exempt and no additional property was transferred into or used to acquire the replacement property." N.C. Gen. Stat. § 1C-1601(d).

distinguished between converting non-exempt assets into dollar-limited exempt assets, and between transferring non-exempt assets into unlimited exempt assets, *see, e.g., Norwest Bank Neb., N.A. v. Tveten*, 848 F.2d 871, 876-77 (8th Cir. 1988), with the resulting policy implication being that taking advantage of some exemption planning is permissible, but not if it results in changing the status of all or nearly all of the debtor's assets from non-exempt to exempt.

Further, even the *Ford* case, on which the debtors rely, establishes that extrinsic evidence of fraud can (and did, in that case) support a finding of intent. *See Ford*, 773 F.2d at 54. In *Ford*, the court denied the debtor's discharge where the debtor transferred real property to tenancy by the entirety one day after entry of a judgment against him and one year prior to filing for bankruptcy relief. Significantly, the timing of the transfer constituted the entirety of the extrinsic evidence of fraud. *See id*. at 55. Against this backdrop, the Fourth Circuit crafted the following rule:[7] "if the transfer of property occurs within one year of the bankruptcy filing and there is evidence to indicate a fraudulent purpose aside from the mere conversion of non-exempt property," the transfer was made with intent to hinder, delay or defraud.[8] *See id*. The *Ford* court did not explain further what might constitute "extrinsic evidence" in this context. However, citing *Ford*, the *Arregui* court did provide examples of extrinsic evidence, including that the transferor (1) had been sued or threatened with suit prior to the transfer, (2) radically departed from a previous

---

[7] Although *Ford* articulates that a showing of suspicious timing *and* extrinsic evidence are required, the court focused almost exclusively on timing concerns and did not identify any other extrinsic evidence. *See Ford*, 773 F.2d at 53, 55.

[8] In *Ford*, the trustee sought a denial of the debtor's discharge under § 727(a)(2) for transfer of property within one year before filing the petition "with intent to hinder, delay, or defraud a creditor." The claims in this case and in *Ford* address two remedies for the same conduct: the avoidance action seeks recovery of the transferred asset, while the discharge action punishes the debtor for fraudulent conduct. The underlying analysis is the same: a determination of whether the debtor made a transfer with the intent to hinder, delay, or defraud a creditor. Therefore, unlike what counsel for Mr. Albrecht and Ms. Moore maintained during the summary judgment hearing, the entirety of *Ford* is very much analogous and applicable to the issue, and not just the general statement approving of some exemptions planning on which they rely.

lifestyle, (3) materially misled or deceived creditors about the debtor's position, (4) conveyed the property for less than fair consideration, (5) continued retention, benefit, or use of property after the transfer, (6) transferred property after a creditor obtained a judgment, and (7) made false statements or failed to disclose the transfer on his or her bankruptcy schedules. *Arregui,* 2023 WL 6205616, at *9 (citations omitted).

In accordance with *Ford*, Mr. Albrecht's transfer from non-exempt real property to exempt real property is not fraudulent solely because it was made on the eve of bankruptcy. However, there is extrinsic evidence to support a finding of intent to hinder, delay or defraud his creditors based on the presence of several badges of fraud. As noted by the Trustee, the transfer was to an insider, Mr. Albrecht retained possession or control of the transferred property after the transfer, the transfer was of substantially all of Mr. Albrecht's assets, Mr. Albrecht did not receive reasonably equivalent value in exchange for the transfer (as found by the court above), and Mr. Albrecht was insolvent or became insolvent shortly after the transfer was made.

Here, the presence of these several badges of fraud creates a presumption of fraudulent intent.[9] *See Coley*, 608 B.R. at 635. The burden shifted to Mr. Albrecht and Ms. Moore to rebut this presumption by showing a legitimate intervening purpose for the transfer. However, the defendants did not offer an intervening purpose for the transfer and instead focused on the absence of two badges of fraud (concealment and lack of reasonably equivalent value) and on the suggestion that acting on advice of counsel buffers them from a finding of actual intent. Disclosure

---

[9] Had the court been persuaded that reasonably equivalent value was received, the presumption of actual intent to hinder, delay or defraud still has been established due to the presence of the four other badges of fraud. *See also Arregui,* 2023 WL 6205616 at *5-10 (finding reasonably equivalent value but still determining the statutory factors supported the inference that the debtors acted with fraudulent intent, including that they retained possession or control of the property after the transfer, that they did not disclose the transfer on their statement of financial affairs despite making the transfer only three days before the petition date, and that the transfer deprived the estate of substantially all of the debtors' nonexempt assets, in addition to the debtors' insolvency under the Bankruptcy Code.).

is not just commendable, it is expected, and it does not negate the presence of other badges of fraud. Similarly, relying on the advice of one's attorney does not somehow cleanse a transfer that is made with actual intent to hinder creditors.[10] Neither a lack of concealment nor reliance on counsel's advice establish a legitimate intervening purpose for the transfer. Additionally, as explained in the discussion of constructive fraud, the contention that Mr. Albrecht received reasonably equivalent value is unsupported by any precedent originating in the Fourth Circuit. In short, Mr. Albrecht and Ms. Moore did not rebut the presumption of actual intent to hinder, delay or defraud by providing a legitimate intervening purpose for the transfer.

Because the court concludes that the badges of fraud demonstrate actual intent to hinder, delay or defraud creditors, and because the other elements of § 548(a)(1)(A) and North Carolina General Statutes § 39-23.4(a)(1) are undisputed, the court finds that the Trustee is entitled to judgment as a matter of law on the claims under § 548(a)(1)(A) and North Carolina General Statutes § 39-23.4(a)(1).

## CONCLUSION

Based on the foregoing conclusions of law, the Trustee's motion for summary judgment is allowed on all the federal and state transfer avoidance claims, and summary judgment will be entered in favor of the Trustee. Mr. Albrecht's and Ms. Moore's cross-motion for summary judgment is denied on all claims.

A separate judgment will be entered.

## END OF DOCUMENT

---

[10] Presumably the defendants were also properly advised by counsel that the legal arguments to be advanced in support of the transfer, even if made by counsel in good faith, might be rejected by the court and that the transfer would be subject to avoidance.